UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALYSSA KAY HILLMAN,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

DECISION & ORDER

18-CV-339P

## PRELIMINARY STATEMENT

  Plaintiff Alyssa Kay Hillman ("Hillman") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket ## 6, 18).

  Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 13, 16). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

2

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    Analysis

Among other alleged errors, Hillman contends that remand is warranted because the Appeals Council failed to properly consider an opinion rendered by psychiatrist Alfred Belen III ("Belen"), MD,[1] that she submitted after the ALJ's decision, but prior to the Appeals Council's denial of her request for review of that decision. (Docket ## 13-1 at 19-23; 17 at 5-7). In its denial, the Appeals Council acknowledged receipt of Belen's opinion, but concluded that it did not "show a reasonable probability that it would change the outcome of the [ALJ's] decision." (Tr. 2).[2] Accordingly, the Appeals Council "did not consider and exhibit" Belen's opinion. (*Id.*).

"The Appeals Council must consider additional evidence that a claimant submits if the claimant can show good cause for not submitting it to the ALJ, it is new, material, and relates to the period on or before the ALJ's decision, and there is a reasonable probability that it would change the outcome of the decision." *Redic v. Comm'r of Soc Sec.*, 2019 WL 1512556, *3 (W.D.N.Y. 2019) (citing, *inter alia*, 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b)).[3]

---

[1] The Appeals Council indicated that the evaluation was authored by "Dr. Belor, M.D./Dr. Capote, M.D.," but it appears to have been authored by Belen, who initially evaluated Hillman on January 27, 2016. (Tr. 326-28).

[2] The administrative transcript shall be referred to as "Tr. __."

[3] These regulations were amended effective January 17, 2017, with compliance required beginning on May 1, 2017. (Tr. 10); *see* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5); 81 Fed. Reg. 90987-01 (December 16, 2016). Hillman filed her claim for benefits on November 27, 2013, and requested that the Appeals Council review the ALJ's decision on October 28, 2016, before the revisions took effect. (Tr. 147, 149). Acknowledging that her claim was pending prior to the revisions, the Appeals Council dispensed with the requirement that Hillman demonstrate "good cause for not submitting" Belen's opinion earlier, but nonetheless determined – with reference to the language of the amended regulations – to reject Belen's opinion because it did not "show a reasonable probability that it

4

"Evidence is 'new' when it has not been considered previously in the administrative process," *Pferrer-Tuttle v. Colvin*, 2015 WL 5773524, *5 (W.D.N.Y. 2015), and when it is "not cumulative of what is already in the record," *Pennetta v. Comm'r of Soc. Sec.*, 2019 WL 156263, *3 (W.D.N.Y. 2019). Evidence is "material" when it is "relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." *Id.* (citing *Webb v. Apfel*, 2000 WL 1269733, *14 (W.D.N.Y.), *report and recommendation adopted by*, 2000 WL 1209385 (W.D.N.Y. 2000)); *accord Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("[n]ew evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative'[;] . . . [t]he concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently") (brackets and citation omitted).

"If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision," although the "[n]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)). The reviewing court's task then is to determine "whether substantial evidence supports the ALJ's decision[] when the new evidence is included in the administrative record." *Ryder v. Colvin*, 2015 WL 9077628, *4 (W.D.N.Y. 2015).

---

would change the outcome of the [ALJ's] decision." (Tr. 2, 10-11). Neither party has briefed whether the revisions should apply retroactively to Hillman's claim or whether the revised regulations, assuming they apply, alter the existing standards applicable to this Court's review. Indeed, both parties rely upon caselaw applying the regulations in effect at the time Hillman's claim was filed. (Docket ## 13-1 at 20; 16-1 at 17, 19-20). Under such circumstances, I will apply the same standards and principles that would guide my review under the previous regulations. *See*, *e.g.*, *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 752 & n.6 (11th Cir. 2018) (applying law applicable to previous regulations and noting that the amendments "lacked retroactive effect").

5

At the time of the ALJ's decision, the record contained three medical opinions assessing Hillman's mental work-related functioning. (Tr. 72-78, 283-86, 320-24). The first opinion, rendered by state examining physician Susan Santarpia ("Santarpia"), PhD, dated December 19, 2013, indicated that Hillman was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. (Tr. 285). On January 14, 2014, state agency non-examining consultant Dr. L. Hoffman ("Hoffman") opined that although Hillman suffered from some moderate limitations in her mental ability to complete work-related functions, she would "be able to adequately function in low contact, stress environments." (Tr. 75-76). The third opinion, authored by Hillman's primary care nurse practitioner Michael J. Ostolski, ("Ostolski"), FNP, on January 28, 2016, stated that Hillman would perform poorly[4] in most areas of mental work-related functioning and would likely be absent more than four days per month. (Tr. 322-24).

        The ALJ gave significant weight to the opinions of Santarpia and Hoffman due to the doctors' experience and the fact that the opinions themselves were consistent with each other and the overall medical evidence. (Tr. 24). The ALJ gave "little weight" to Ostolski's opinion because he was neither a mental health professional nor an acceptable medical source. (Tr. 24-25). The ALJ also concluded that Ostolski's opinion was not consistent with the "well-supported" opinions of Santarpia and Hoffman, Hillman's activities of daily living, and stable GAF scores. (*Id.*). Finally, the ALJ recognized that Ostolski, in his treatment notes, expressed reservations about completing the mental health questionnaire, preferring that it be

---

[4] "Poor" was defined to mean "[l]ow level of functioning in this area will frequently (between 1/3 and 2/3 of a work day) significantly impair and/or preclude performance of even simple work tasks." (Tr. 322).

completed by Hillman's treating mental health practitioners. Yet, as noted by the ALJ, "there [were] no opinions in the record from treating mental health practitioners." (Tr. 25). Ultimately, the ALJ concluded that Hillman retained the mental RFC to perform simple, routine tasks that do not require team work such as work on a production line or more than superficial interaction with the public and occasional interaction with coworkers. (Tr. 21).

After the ALJ's thorough decision, but prior to the Appeal Council's denial of review, on April 5, 2017, Belen completed a form relating to Hillman's mental health functional limitations entitled "Medical Assessment of Ability to do Work-Related Activities (Mental)." (Tr. 7-9). The record demonstrates that Belen initially conducted a psychiatric evaluation of Hillman on January 27, 2016, although it is not clear from the record whether Belen continued to provide treatment to Hillman after that time. (Tr. 326-28). According to Belen, Hillman had a poor[5] ability to relate to coworkers, deal with the public, deal with work stress, maintain attention/concentration, understand, remember, and carry out detailed or complex instructions, relate predictably in social situations, demonstrate reliability, and handle stressful situations that arise in all employment settings. (Tr. 7-8). Belen opined that Hillman had a fair[6] ability to follow work rules, use judgment, interact with supervisors, function independently, understand, remember and carry out simple instructions, maintain personal appearance, and behave in an emotionally stable manner. (*Id.*).

Belen also opined that Hillman's functioning would significantly deteriorate if she attempted to work full-time and estimated that she would be able perform two-step tasks less than seventy-five percent of the workday. (Tr. 8). According to Belen, Hillman would be absent

---

[5] "Poor" was defined to mean "[l]ow level of functioning in this area will frequently (between 1/3 and 2/3 of a work day) significantly impair and/or preclude performance of even simple work tasks." (Tr. 7).

[6] "Fair" was defined to mean "[a]bility to function in this area will occasionally (up to 1/3 of a work day) significantly impair and/or preclude performance of even simple work tasks." (Tr. 7).

7

from work more than four days per month. (*Id.*). Belen attributed Hillman's limitations to her diagnoses of generalized anxiety disorder and bipolar disorder and indicated that she had suffered from these limitations since at least January 27, 2016. (Tr. 7, 9).

Neither party disputes that Belen's opinion was new; rather, the salient dispute relates to materiality – whether Belen's opinion would likely have influenced the ALJ's consideration of Hillman's claim. *See Pollard v. Halter*, 377 F.3d at 194 (materiality standard satisfied where new opinion was "likely to affect the ALJ's consideration of [the] claim"). Having reviewed the entire record, I find that the materiality standard is met. Belen's opinion is largely consistent with the opinion submitted by Ostolski, which was discounted by the ALJ. Indeed, both Belen and Ostolski assessed that Hillman's ability to perform in several areas of work-related functioning was "poor." (Tr. 7-9, 320-24). Further, both opined that Hillman would miss more than four days of work per month. (Tr. 8, 324).

In his decision, the ALJ assigned greater weight to Santarpia's and Hoffman's opinions than to Ostolski's because Santarpia and Hoffman were experienced mental health professionals, and Ostolski was not, and their opinions were consistent with each other's, but not with Ostolski's. Notably, Belen is an experienced psychiatrist who had evaluated Hillman prior to rendering his opinion, and his opinion is substantially consistent with Ostolski's opinion. On this record, had the ALJ been able to review Belen's opinion, his evaluation of the relative weights he assigned to the opinions of Santarpia, Hoffman, and Ostolski would likely have been affected, as well as his overall consideration of the claim. Under these circumstances, remand is warranted for reconsideration of the entire administrative record, including the new evidence submitted to the Appeals Council. *See Bantle v. Colvin*, 2017 WL 726874, *10 (W.D.N.Y. 2017) (remanding for reconsideration of entire record in light of new evidence; "if the ALJ had

8

reviewed the [new evidence], . . . the ALJ might also have altered the weights he accorded [to the other medical opinions contained in the record]").

The Commissioner contends that several reasons exist to discount or reject Belen's opinion, including that he may not qualify as a treating physician and that his opinion is inconsistent with the record as a whole, including the opinions of Santarpia and Hoffman. (Docket # 16-1 at 21-23). For these reasons, the Commissioner argues, Belen's opinion does not support Hillman's claim for benefits and would not have affected the ALJ's decision. (*Id.*). Although the Commissioner may be correct that reasons exist for discounting or rejecting Belen's opinion, those reasons must be considered in the first instance by the ALJ or the Appeals Council, not by this Court. *See Lesterhuis v. Colvin*, 805 F.3d at 88-89 ("substantive critique of [treating physician's] opinions places courts, and not the SSA, in the position of making factual and medical determinations about the evidence before the agency[;] [n]either the ALJ nor the Appeals Council analyzed the substance of [the treating physician's] opinion, and we may not 'affirm an administrative action on grounds different from those considered by the agency'") (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). On remand, the ALJ must consider Belen's opinion and determine whether it should be given controlling weight and whether Hillman is ultimately entitled to benefits; if the ALJ determines that the opinion is not entitled to controlling weight, the ALJ should explain the reasons for discounting or rejecting the opinion. *Lesterhuis*, 805 F.3d at 88 (that a treating physician's opinion is generally entitled to controlling weight does not preclude the ALJ from concluding, upon remand, that particular opinion is "not entitled to any weight, much less controlling weight, but that determination should be made by the agency in the first instance").

Hillman also challenges the ALJ's determination on the separate grounds that the physical RFC was not adequately supported by the medical opinion authored by state examining consultant Donna Miller, DO. (Docket ## 13-1 at 14-19; 17 at 1-5). In light of my determination that remand is otherwise warranted, I decline to reach Hillman's remaining contentions. *See Erb v. Colvin*, 2015 WL 5440699, *15 (W.D.N.Y. 2015) (declining to reach remaining challenges to the RFC and credibility assessments where remand requiring reassessment of RFC was warranted).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 16)** is **DENIED**, and Hillman's motion for judgment on the pleadings **(Docket # 13)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

          *s/Marian W. Payson*
          MARIAN W. PAYSON
          United States Magistrate Judge

Dated: Rochester, New York
       September 16, 2019